JAMES R. FOUTS, Respondent, v. SWIFT & COMPANY, Appellant.

Kansas City Court of Appeals, February 6, and June 5, 1905.

1. **MASTER AND SERVANT: Place of Work: Defective Machinery: Pleading.** Under the view of the petition that it counts on the arrangement of certain machinery near plaintiff's place of work and not upon a defect in the machinery used by the plaintiff, it clearly states a cause of action.

2. ——: **Electric Fan: Negligence: Assumption of Risk.** Hanging an electric fan so low that one may walk into it and leaving it without a screen near a servant's place of work is negligence and is not a risk incident to his employment.

3. ——: ——: **Contributory Negligence: Jury Question.** On the evidence it is held proper to send to the jury the question of the servant's negligence in coming in contact with an electric fan near his place of work; and other criticisms of the rulings below are held not well taken.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

AFFIRMED.

*Mosman & Ryan* for appellants.

(1) The petition failed to state facts sufficient to constitute a cause of action, and the court erred in over-

ruling the defendant's motion made at the opening of the trial, to exclude all evidence under the same. Mallinckrodt Works v. Neinmich, 169 Mo. 397; Burnham v. Boyd, 167 Mo. 188-189; Knapp-Stout v. City, 156 Mo. 352-353; Sidway v. Land Co., 163 Mo. 374. (2) No duty on the part of the defendant to screen or guard the fan is alleged. (3) No facts are stated from which such a duty could arise. Field v. Railroad, 76 Mo. 614. (4) Negligence can only be predicated upon the existence of a duty owing to the plaintiff, which has been violated. Hallihan v. Railroad, 71 Mo. 116; Field v. Railroad, 76 Mo. 614; Troth v. Norcross, 111 Mo. 630; Richards v. Rough, 18 N. W. 787; Bradley v. Railroad, 138 Mo. 302; Winkler v. Basket Co., 137 Mo. 400. (5) The plaintiff had full knowledge of the dangers to be apprehended, if any portion of his person came in contact with the wings of the fan. Even in cases where the machine or implement is defective, the law charges the servant with full notice of the danger. Porter v. Railroad, 71 Mo. 77, 78; Hulett v. Railroad, 67 Mo. 239; Nugent v. Kauffman, 131 Mo. 256. Electrical Co. v. Kelley, 110 Ill. App. 334; Hill v. Drug Co., 140 Mo. 433; Naylor v. Railroad, 53 Wis. 661; Walsh v. Railroad, 27 Minn. 367. (6) The petition assumes that by the common law, the defendant was required to guard or screen this fan. The common law made no such requirement of the defendant. Schroeder v. Car Co., 56 Mich. 132; Townsend v. Langlese, 41 Fed. 919; Sullivan v. Mfg. Co., 113 Mass. 396; Clark v. Barnes, 37 Hun 389; Slepinson v. Duncan, 73 Wis. 404; Sanborn v. Railroad, 35 Kan. 292; Lore v. Mfg. Co., 160 Mo. 608. (7) The defendant was not bound to screen the fan. Bradley v. Railroad, and other cases, supra. (8) Here the plaintiff was performing his regular duties entirely apart from and independent of the fan. No facts are stated in petition which show any possible relation between the fan and his duties or work. The fan

was stationary. One injured by it must, by his own action bring himself within its field of operation. It could not move from its position to his, and strike him. Wray v. Electric Co,, 69 Mo. App. 388; Jackson v. Railroad, 104 Mo. 148; Fugler v. Bothe, 117 Mo. 494-496; Halloran v. Iron Co., 133 Mo. 477; Lucy v. Oil Co., 129 Mo. 39; Burnes v. Railroad, 129 Mo. 41; Cothron v. Packing Co., 98 Mo. App. 343; Marshall v. Hay Press Co., 69 Mo. App. 280; Bradley v. Railroad, 138 Mo. 302; Winkler v. Basket Co., 137 Mo. 400; Electrical Co. v. Kelley, 110 Ill. App. 334; Watson v. Coal Co., 52 Mo. App. 372; Moore v. Railroad, 55 Mo. App. 493; Harff v. Green, 168 Mo. 312; Cordage v. Miller, 126 Fed. 495. (9) The rule of law is, that where the employee can, by the exercise of ordinary care and attention to his duties, protect himself from injury he will not be allowed to recover damages from his employer. Smith v. Railroad, 61 Mo. 590; Bridges v. Railroad, 3 Mees. I. N. 244; Moore v. Railroad, 176 Mo. 544; Doerr v. Brewing Assn., 176 Mo. 547; Spiva v. Coal Co., 88 Mo. 168.

*Culver, Phillip & Spencer* for respondent.

(1) The petition states facts sufficient to constitute a cause of action. (2) Plaintiff did not assume the risk of being injured by the fan. Curtis v. McNair, 73 S. W. 167; Wendler v. Furnishing Co., 165 Mo. 527; Settle v. Furnishing Co., 127 Mo. 336; Pauck v. Dressed Beef Co., 159 Mo. 467; Carter v. Baldwin, 81 S. W. 204. (3) Defendant's second contention is that the demurrer asked by it at the close of the plaintiff's evidence should have been sustained because it showed plaintiff to be guilty of such contributory negligence as precluded him from recovering. Upon this question the law is well settled in this State. If the danger is not so glaring that a man of common prudence would not incur the risk then the servant if he remains can recov-

er. (4) In other words if the danger is such that reasonable men might differ as to its imminence, or when the danger is such as "not to threaten immediate injury," or when it is reasonable to suppose that it may be safely incurred "with great caution or skill," the plea of contributory negligence should be submitted to the jury. Smith v. Railroad, 61 Mo. 591; Stoddard v. Railroad, 65 Mo. 521; Conroy v. Iron Works, 62 Mo. 39; Hamilton v. Mining Co., 108 Mo. 376; and cases cited.

ELLISON, J.—This is an action for personal injury which resulted in plaintiff's favor in the trial court. We can dispose of a considerable part of defendant's objections to the judgment by correcting an impression which must have prevailed when the brief was written as to the nature of the cause of action which plaintiff has set out. He has not complained of defective machinery in the sense of being compelled to use such machinery. The machine which injured him was not one with which he worked, but it was one situated near by the place *where* he worked and, as he contends, made that place unsafe. Under the latter view of the petition it clearly states a cause of action and all objections on that head which have been urged by defendant are not well taken.

The defendant is a corporation engaged in killing and packing meats at the city of St. Joseph and in such business it conducted a cooperage department where it made barrels and where plaintiff was engaged as a servant. There were fires where the barrels were heated, and when heated they were passed out and along to a number of employees who performed their assigned part of the work in the process of making them a finished barrel. Plaintiff's duty was to receive the barrels when heated, "level" them on a plane surface provided for that purpose, and then pass them on to the man assigned to

113 app—34

perform the next duty upon them. The fires and the nature of the service in this process of manufacture made it quite warm and so defendant provided an electric fan for the comfort of those there engaged. The fan consisted of a hub or center piece from which several steel paddles projected—these revolved noiselessly and with exceeding great rapidity. The fan was suspended from the ceiling of the room and came down partially through a platform near the end. The platform itself did not rest upon the floor, but was held suspended about five feet and four inches above the floor by four or more pieces of timber of about two by four inches dimension. These timbers partially enclosed the fan above the platform and for about four inches below. Yet a person could go under the platform between the ends of these timbers and thus come in contact with that portion of the ends of the paddles of the fan which revolve below the platform. The platform was between two and two and one-half feet square, and the fan was at the side or end furtherest away from where plaintiff worked. A brick cross-wall seemed to have been so constructed that the end of it came against the platform near the center. At the time plaintiff was hurt there was a short lull in the work and he had taken a broom and swept away some dirt or trash which would accumulate from time to time from the work. He placed the broom in the corner made by the brick wall and platform where they came together and when he was in the act of turning around he found himself in such close contact with the platform that he instinctively dodged his head down till it cleared the platform, and in making the swing of the turn with his head bent forward or outward from a perpendicular line with his body, it came in contact with the fan which, as before stated, extended some inches under the platform, and received the serious injury of which he complains.

As the barrels were heated they were started on to-

wards plaintiff by rolling under the platform and fan, and it became necessary for him to reach under for them many times a day. Plaintiff had spoken to the foreman in regard to danger from the fan and had been told that it would be attended to when "they could get around to it." It had also been stated between them that the fan ought to be screened. Plaintiff said that he knew of the danger, but he thought he could get on safely by being careful.

In stating how plaintiff came in contact with the fan we have not pretended to follow the language of any particular witness, but have described it according to the way the evidence shows it must necessarily have occurred. We are satisfied that a prima facie case was made for the plaintiff. There is no room for doubt that the plaintiff was hurt while engaged in the performance of his duty as an employee. The only questions in the case are, whether the injury was a risk of his employment and whether he was guilty of contributory negligence?

It appears clear that it was negligence in the defendant to leave so dangerous a device (noiseless in operation) as an electric fan to be hung so low down from the ceiling that one could walk into, or against it, and not have it, in some way, shut off from contact with those who might be at work near it. It was not machinery with which plaintiff was required to work, but it constituted a dangerous condition to the safety of the place. As much so as would be an open and unguarded well, or an unguarded opening in a floor. We said in Zellars v. Water & Light Co., 92 Mo. App. 124, in speaking of the master's duties to the servant: "He does not insure the safety of the place to work, but he *does* insure that he will *not be negligent in his effort* to have it safe. And if he is negligent in that respect, he is liable absolutely to the servant, unless, of course, the servant was himself guilty of contributory negligence; or, unless it

be one of those instances (which it is not necessary, in this case, to define) where the servant assumes the risk of injury." In this case, even under that branch of authority which takes the most extreme view of assumption of risk exonerating the master (Glenmount Lumber Co. v. Roy, 126 Fed. Rep. 524), the warning which this plaintiff gave the foreman, and the latter's assurance that he would protect the fan so soon as he could get around to it, took the question of assuming the risk out of the case. Hough v. Railroad, 100 U. S. 213, 225.

Practically then there is but one question—and that is contributory negligence. It is the theory of defendant that as plaintiff might easily have walked around the platform and avoided the fan, he need not have stooped under it and ran into the fan. The theory of the plaintiff is that in the act of turning around, he found himself about to go against the platform and that he stooped or "ducked" his head under it and thereby came in contact with the fan. There was evidence to support that view and we will not say, as a matter of law, that under such circumstances he should have caught himself (as possibly he might have done) and walked around. Defendant says that he must have walked clear under the platform, that is, from one side to the other, as the fan was on the far side from him. But it must be borne in mind that the platform was a very small affair, only between twenty-four and thirty inches wide, and that in "ducking" under it, as expressed by witnesses, one might strike his head against an object on the opposite side while his body was just under the edge of the other side. Counsel use the expression that plaintiff to strike the fan would have had to pass "clear under" or "clear over to the other side," as though it was quite a distance and that one would have to deliberately walk over to the fan. The fact is, as before intimated, that from one side to the other of the small platform

was, perhaps, within the circle one's head would describe in turning round in a stooped position.

The objections to evidence was numerous. What we have already written disposes of many of them. The remaining we believe not well taken. We think that nothing was admitted or excluded which in any manner affected the substantial merits of the case.

The instructions given for plaintiff were proper and were in keeping with the law as it is laid down in this State. [Curtis v. McNair, 173 Mo. 270; Wendler v. People's Furnishing Co., 165 Mo. 527; Settle v. Railroad, 127 Mo. 336; Pauck v. Dressed Beef Co., 159 Mo. 467.]

A careful examination of the whole record satisfies us that no error was committed which materially affected the merits of the case and the judgment must therefore be affirmed. All concur.